UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

HERMAN L. HALL,

        Plaintiff,

v.                                      Case No. 3:20-cv-427-MMH-JRK

CENTURION OF FLORIDA, LLC,
et al.,

        Defendants.

_____

## ORDER

### I.    Status

Plaintiff Herman Hall, an inmate of the Florida penal system, initiated this action with the assistance of counsel on April 24, 2020, by filing a civil rights complaint under 42 U.S.C. § 1983 (Doc. 1). Hall is proceeding on a second amended complaint (Second Amended Complaint; Doc. 45). Hall names as defendants Centurion of Florida, LLC (Centurion), Hezekiah George Owojuyigbe, M.D., and Elliot E. Perez-Lugo, M.D. (collectively Defendants). In the Complaint, Hall alleges Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Second Amended Complaint at 2, 12-17. As relief, Hall seeks compensatory and punitive damages, attorney fees and costs, and "[a]ny other and further relief as this Court deems just and equitable." Id. at 18. Before the Court is Defendant's

motion to dismiss filed on November 3, 2020. <u>See</u> Defendant Centurion of Florida, LLC, Dr. Perez-Lugo, and Dr. Hezekiah George Owojuyigbe's Motion to Dismiss Plaintiff's Second Amended Complaint (Motion; Doc. 46). Defendants attached as an exhibit Hall's inmate information as provided on the Florida Department of Correction's website (Doc. 46-1). Hall filed a response. <u>See</u> Plaintiff's Response in Opposition to Motion to Dismiss Plaintiff's Second Amended Complaint by Defendants Centurion of Florida, LLC, Dr. Perez-Lugo and Dr. Hezekiah George Owojuyigbe (Response; Doc. 50). The Motion is ripe for review.

## II.    Hall's Allegations

In the Second Amended Complaint, Hall contends that Defendants have been deliberately indifferent "to his eye care regarding his open-angle, severe glaucoma which has resulted in the complete loss of vision in his right eye and continuing loss of vision in his left eye to the point where he is practically, legally blind in both eyes." Second Amended Complaint at 4. According to Hall, Centurion "has a custom or practice of permitting delays which result in constitutional violation[s] because the policy is evidence of deliberate indifference to a glaucoma patient's need for treatment to reduce eye pressure in a timely manner and is a longstanding and widespread practice." <u>Id.</u> at 4-5. More specifically, Hall contends that Centurion has a cost-savings policy denying healthcare to glaucoma patients. <u>Id.</u> at 5. In support, he asserts that

2

at least two other inmates have lost their vision due to Centurion's cost-savings policy. Id. at 5-6. Hall maintains that all decision makers in Centurion's chain of command were aware of Hall's need for timely treatment to avoid vision loss but either delayed Hall's visits to outside consultants or withheld critical medicine from him. Id. at 5.

Hall alleges that beginning in September of 2012, an optometrist examined him routinely, yet despite the fact that his vision was getting worse after each examination (ultimately resulting in Hall becoming legally blind), the optometrist did not refer Hall to an outside ophthalmologist until February 28, 2018. Id. at 7-8. According to Hall, the referral the optometrist recommended on February 28th was ignored and never acted upon. Id. at 8. The prison optometrist examined Hall again in March of 2018, but the optometrist failed to refer him to an ophthalmologist despite the fact Hall "had good vision to preserve at that point" in his left eye. Id. at 8-9. On November 5, 2018, Hall was referred to an ophthalmologist, but this referral was likewise never acted upon. Id. at 10. Hall alleges that there was a "possible referral to Ophthalmologist" but that it was not documented in his medical records. Id. He also asserts that he was denied medicinal eyedrops that a treating ophthalmologist had ordered. Id. at 11-12. According to Hall, he filed multiple grievances throughout 2018 and 2019 regarding the lack of treatment he received. Id. at 9-12. Owojuyigbe and Perez-Lugo were the on-site medical

directors during this period of time and denied his grievances. Id. Hall contends that these Defendants were aware of his serious medical need but repeatedly took no action to refer him to an ophthalmologist to preserve his vision so as to avoid incurring expenses for Centurion. Id. at 12.

## III.   Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002); see also Lotierzo v. Woman's World Med. Ctr., Inc., 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. See Randall v. Scott, 610 F.3d 701, 705 (11th Cir. 2010). Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that

4

the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 678 (quoting Twombly, 550 U.S. at 570). And, while "[p]ro se pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed," Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir. 1998), "'this leniency does not give the court a license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action.'" Alford v. Consol. Gov't of Columbus, Ga., 438 F. App'x 837,

839 (11th Cir. 2011)[1] (quoting <u>GJR Invs., Inc. v. Cty. of Escambia, Fla.</u>, 132 F.3d 1359, 1369 (11th Cir. 1998) (internal citation omitted), <u>overruled in part on other grounds as recognized in</u> <u>Randall</u>, 610 F.3d at 706).

## IV.    Eighth Amendment Standard

Pursuant to the Eighth Amendment of the United States Constitution, "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994) (quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). "To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." <u>Oliver v. Fuhrman</u>, 739 F. App'x 968, 969 (11th Cir. 2018) (citing <u>Chandler v. Crosby</u>, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. <u>Id.</u> The challenged condition must be extreme and must pose an unreasonable risk

---

[1] "Although an unpublished opinion is not binding . . . , it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); <u>see generally</u> Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.

Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" Melton v. Abston, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting Estelle v. Gamble, 429 U.S. 97, 102 (1976)). The Eleventh circuit has explained that

To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir.2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of

7

> that risk; (3) by conduct that is more than [gross] negligence." Townsend v. Jefferson Cnty., 601 F.3d 1152, 1158 (11th Cir.2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir.2003) (quotation omitted).

Easley v. Dep't of Corr., 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Nimmons v. Aviles, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir.1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem). However, the law is well settled that the Constitution is not implicated by the negligent acts of corrections officials and medical personnel. Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Davidson v. Cannon, 474 U.S. 344, 348 (1986) ("As we held in Daniels, the protections of the Due Process Clause, whether procedural or substantive, are just not triggered by lack of due care by prison officials."). A complaint that a physician has been negligent "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under

the Eighth Amendment." <u>Bingham v. Thomas</u>, 654 F.3d 1171, 1176 (11th Cir. 2011) (quotation marks and citation omitted). Moreover, the Eleventh Circuit has noted that "[n]othing in our case law would derive a constitutional deprivation from a prison physician's failure to subordinate his own professional judgment to that of another doctor; to the contrary, it is well established that 'a simple difference in medical opinion' does not constitute deliberate indifference." <u>Bismark v. Fisher</u>, 213 F. App'x 892, 897 (11th Cir. 2007) (quoting <u>Waldrop</u>, 871 F.2d at 1033). Similarly, "the question of whether governmental actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment." <u>Adams v. Poag</u>, 61 F.3d 1537, 1545 (11th Cir. 1995) (citation omitted).

## V.    Discussion

In the Motion, Defendants argue this action should be dismissed because (1) Hall has failed to state a claim upon which relief can be granted; (2) Perez-Lugo and Owojuyigbe are entitled to qualified immunity; and (3) the Eleventh Amendment bars Hall's monetary claims against Perez-Lugo and Owojuyigbe in their official capacities. Motion at 1. The Court will address each argument separately.

## A.     Failure to State a Claim

<u>Claims Against Perez-Lugo and Owojuyigbe</u>

According to Defendants, Hall has failed to allege that Perez-Lugo and Owojuyigbe "actually provided medical treatment to him." Motion at 8. Defendants contend that Hall merely alleged that Perez-Lugo and Owojuyigbe reviewed and denied his grievances, which is insufficient to establish an Eighth Amendment violation absent allegations that they personally participated in the alleged unconstitutional conduct. <u>Id.</u> Additionally, Defendants assert that Hall has alleged, at best, that they had constructive knowledge of his condition, not that they had actual knowledge of the substantial risk Hall faced. <u>Id.</u> at 8-9. To the extent Hall's allegations could be construed as establishing actual knowledge, Defendants argue that their decision not to send him to an ophthalmologist "reflects a difference of opinion between their course of treatment and Plaintiff's preferred course of treatment." <u>Id.</u> at 10. However, Defendants maintain that such a difference in opinion is insufficient to establish an Eighth Amendment violation. <u>Id.</u> Moreover, Defendants assert that Hall received medical treatment, including eye-drop medication that Hall refused to use, and exams from two separate optometrists, both of which concluded a referral to an ophthalmologist was not needed. <u>Id.</u> at 10-11. As such, they maintain that Hall's dispute is over the adequacy of his medical care, and his second guessing of the care does not

10

establish an Eighth Amendment violation. Id. at 10-12. Defendants also argue that Hall has failed to allege a due process or equal protection violation under the Fourteenth Amendment. Id. at 13-15.

As it relates to the Fourteenth Amendment claim, Hall explains that he was not alleging a Fourteenth Amendment violation; instead, he merely referenced the Fourteenth Amendment because the Eighth Amendment is applicable to state actors through the Fourteenth Amendment. Response at 10. Based on this clarification, the Court finds Hall did not raise a Fourteenth Amendment claim. Therefore, the Motion is due to be denied as moot as to this point.

Concerning the Eighth Amendment claims, Hall argues that as medical directors, Perez-Lugo and Owojuyigbe "were aware of the deterioration of vision in Plaintiff's left eye from March 27, 2018, when it was OS 20/30 IOP 34 to total loss of vision in his left eye as found by Dr. Humphrey, the Optometrist, on December 10, 2018." Response at 5. According to Hall, the doctors were aware of the severe angle glaucoma in his left eye, which could result in total vision loss if untreated, yet refused to refer Hall to an ophthalmologist. Id. Hall maintains that Perez-Lugo and Owojuyigbe "deliberately ignored [Hall's] impending loss of all sight even though they were aware the visits by the Optometrist and eye drops were not working." Id. at 5-6. As to the eye-drops, Hall disputes that he was non-compliant in taking the medication; instead,

11

asserting that Centurion "repeatedly was late in providing him his eye drops." Id. at 4. Additionally, he contends that the drops were ineffective, and Defendants were aware of their ineffectiveness but refused to provide effective treatment because it would have been too expensive. Id. at 8-9.

As it relates to liability for supervisors in § 1983 claims, the Eleventh Circuit has explained:

> "Supervisory officials are not liable under section 1983 on the basis of respondeat superior or vicarious liability." Belcher v. City of Foley, Ala., 30 F.3d 1390, 1396 (11th Cir. 1994) (internal quotation marks and citation omitted). "The standard by which a supervisor is held liable in her individual capacity for the actions of a subordinate is extremely rigorous." Gonzalez, 325 F.3d at 1234 (internal quotation marks and citation omitted).[2] "Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official  and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).
>
> "The necessary causal connection can be established 'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.'" Cottone, 326 F.3d at 1360 (citation omitted).[3] "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. A plaintiff can also establish the necessary causal connection by showing "facts which support an

___

[2] Gonzalez v. Reno, 325 F.3d 1228 (11th Cir. 2003).
[3] Cottone v. Jenne, 326 F.3d 1352 (11th Cir. 2003).

> inference that the supervisor directed the
> subordinates to act unlawfully or knew that the
> subordinates would act unlawfully and failed to stop
> them from doing so," <u>Gonzalez</u>, 325 F.3d at 1235, or
> that a supervisor's "custom or policy . . . resulted in
> deliberate indifference to constitutional rights," <u>Rivas
> v. Freeman</u>, 940 F.2d 1491, 1495 (11th Cir. 1991).

<u>Danley v. Allen</u>, 540 F.3d 1298, 1314 (11th Cir. 2008) (<u>overruled on other
grounds</u> as recognized by <u>Randall v. Scott</u>, 610 F.3d 701, 709 (11th Cir. 2010)
(rejecting the application of a heightened pleading standard for § 1983 cases
involving qualified immunity)); <u>see also</u> <u>Keith v. DeKalb Cty., Ga.</u>, 749 F.3d
1034, 1047-48 (11th Cir. 2014). In sum,

> To state a claim against a supervisory defendant, the
> plaintiff must allege (1) the supervisor's personal
> involvement in the violation of his constitutional
> rights,[4] (2) the existence of a custom or policy that
> resulted in deliberate indifference to the plaintiff's
> constitutional rights,[5] (3) facts supporting an
> inference that the supervisor directed the unlawful
> action or knowingly failed to prevent it,[6] or (4) a
> history of widespread abuse that put the supervisor on
> notice of an alleged deprivation that he then failed to
> correct. <u>See id.</u> at 1328–29 (listing factors in context of
> summary judgment).[7] A supervisor cannot be held

---

[4] <u>See</u> <u>Goebert v. Lee Cty.</u>, 510 F.3d 1312, 1327 (11th Cir. 2007) ("Causation, of course, can be shown by personal participation in the constitutional violation.").

[5] <u>See</u> <u>Goebert</u>, 510 F.3d at 1332 ("Our decisions establish that supervisory liability for deliberate indifference based on the implementation of a facially constitutional policy requires the plaintiff to show that the defendant had actual or constructive notice of a flagrant, persistent pattern of violations.").

[6] <u>See</u> <u>Douglas v. Yates</u>, 535 F.3d 1316, 1322 (11th Cir. 2008) ("Douglas's complaint alleges that his family informed [Assistant Warden] Yates of ongoing misconduct by Yates's subordinates and Yates failed to stop the misconduct. These allegations allow a reasonable inference that Yates knew that the subordinates would continue to engage in unconstitutional misconduct but failed to stop them from doing so.").

[7] <u>West v. Tillman</u>, 496 F.3d 1321 (11th Cir. 2007).

13

> liable under § 1983 for mere negligence in the training
> or supervision of his employees. <u>Greason v. Kemp</u>, 891
> F.2d 829, 836–37 (11th Cir. 1990).

<u>Barr v. Gee</u>, 437 F. App'x 865, 875 (11th Cir. 2011) (per curiam).

In the Second Amended Complaint, Hall alleges Perez-Lugo and Owojuyigbe denied medical grievances he submitted in regard to the treatment of his glaucoma. Second Amended Complaint at 9-11. Hall further contends that as the on-site medical directors, Perez-Lugo and Owojuyigbe "were aware of HALL's 'serious medical need,'[]Glaucoma and severe loss of vision and repeatedly took no action to refer HALL to an Ophthalmologist to preserve HALL's vision in order to avoid incurring the expense of such referrals to their employer Centurion." <u>Id.</u> at 12. He also alleges that each doctor, as site medical directors <u>and</u> his primary care physicians, were aware his vision was deteriorating but refused to refer him to an ophthalmologist because of Centurion's cost-savings policy. <u>Id.</u> at 14-17. In doing so, Hall has alleged sufficient facts that Perez-Lugo and Owojuyigbe were subjectively aware of Hall's glaucoma as both were allegedly Hall's primary care physicians and responded to grievances related to his glaucoma care. Additionally, Hall has alleged a causal connection between his injury and Perez-Lugo and Owojuyigbe's implementation of a cost-savings policy that kept Hall from receiving treatment he alleges would have prevented the further deterioration of his sight. Hall has presented sufficient factual allegations, when taken as

14

true, to state a deliberate indifference claim that is plausible on its face. Therefore, the Motion is due to be denied to the extent Defendants seek a dismissal of claims against Owojuyigbe and Perez-Lugo.

<u>Claims Against Centurion</u>

Defendants also argue that Hall has failed to state an Eighth Amendment claim against Centurion. Motion at 15-18. Relying on their previous arguments, Defendants first contend that Hall has failed to establish Perez-Lugo or Owojuyigbe violated the Eighth Amendment in light of the "extensive care and treatment" Hall received. <u>Id.</u> at 16. As such, they contend Hall has failed to establish a supervisory claim against Centurion. <u>Id.</u> Next, Defendants assert that Hall "fails to sufficiently allege Centurion has a policy of denying healthcare to glaucoma patients because of the expense." <u>Id.</u> Defendants maintain that Hall's contention that two other inmates with glaucoma have similarly been denied treatment is insufficient to show this custom or policy is a persistent and wide-spread practice. <u>Id.</u> at 16-17. According to Defendants, Hall's allegations concerning the policy are too vague and conclusory to establish a claim of deliberate indifference. <u>Id.</u> Lastly, Defendants argue that even if Hall sufficiently alleged the existence of a cost-savings policy, he has failed to show the policy was the moving force behind the alleged constitutional violations because he has failed to establish the existence of constitutional violations. <u>Id.</u> at 17-18.

In response, Hall contends that he did properly allege a deliberate indifference claim against Centurion in its supervisory role. Response at 2. According to Hall, the treatment he did receive was not working and Centurion prevented him from receiving recommended, but more expensive, treatment so as to save money. Id. at 8-9. In doing so, Hall avers that Centurion chose an easier but less efficacious course of treatment that resulted in the deterioration of his vision. Id. Hall also maintains that he pled a facially sufficient Eighth Amendment claim as to Perez-Lugo and Owojuyigbe. Id. at 5-6.

Centurion contracted with the Florida Department of Corrections to provide medical services to inmates within the state of Florida. Although Centurion is not a governmental entity, "[w]here a function which is traditionally the exclusive prerogative of the state … is performed by a private entity, state action is present" for purposes of § 1983. Ancata v. Prison Health Servs., Inc., 769 F.2d 700, 703 (11th Cir. 1985) (citations omitted). Indeed,

> "when a private entity . . . contracts with a county to provide medical services to inmates, it performs a function traditionally within the exclusive prerogative of the state" and "becomes the functional equivalent of the municipality" under section 1983. Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). "[L]iability under § 1983 may not be based on the doctrine of respondeat superior." Grech v. Clayton Cnty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc).

Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); see Denham v. Corizon Health, Inc., Case No. 6:13-cv-1425-Orl-40KRS, 2015 WL 3509294, at

*3 n.1 (M.D. Fla. June 4, 2015) ("[W]hen a government function is performed by a private entity like Corizon, the private entity is treated as the functional equivalent of the government for which it works.") (citation omitted), aff'd (11th Cir. Jan. 13, 2017).

Where a deliberate indifference medical claim is brought against an entity, such as Centurion, based upon its functional equivalence to a government entity, the assertion of a constitutional violation is merely the first hurdle in a plaintiff's case. This is so because liability for constitutional deprivations under § 1983 cannot be based on the theory of respondeat superior. Craig, 643 F.3d at 1310 (quoting Grech v. Clayton Cty., Ga., 335 F.3d 1326, 1329 (11th Cir. 2003) (en banc)); see Denno v. Sch. Bd. Of Volusia Cty., 218 F.3d 1267, 1276 (11th Cir. 2000). Instead, a government entity may be liable in a § 1983 action "only where the [government entity] itself causes the constitutional violation at issue." Cook ex. rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla., 402 F.3d 1092, 1116 (11th Cir. 2005) (citations omitted). Thus, a plaintiff must establish that an official policy or custom of the government entity was the "moving force" behind the alleged constitutional deprivation. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 693-94 (1978).

In Monell, the Supreme Court held that local governments can be held liable for official policies that cause constitutional torts. However, such liability is limited to "acts which the [government entity] has officially sanctioned or

ordered." <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 480 (1986). Under the directives of <u>Monell</u>, a plaintiff also must allege that the constitutional deprivation was the result of "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." <u>Denno</u>, 218 F.3d at 1276 (citations omitted); <u>see</u> <u>Hoefling v. City of Miami</u>, 811 F.3d 1271, 1279 (11th Cir. 2016) (stating <u>Monell</u> "is meant to limit § 1983 liability to 'acts which the municipality has officially sanctioned or ordered'"; adding that "[t]here are, however, several different ways of establishing municipal liability under § 1983").

"A policy is a decision that is officially adopted by the [government entity] or created by an official of such rank that he or she could be said to be acting on behalf of the [government entity]." <u>Sewell v. Town of Lake Hamilton</u>, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted). The policy requirement is designed to "'distinguish acts of the [<u>government entity</u>] from acts of <u>employees</u> of the [government entity], and thereby make clear that [governmental] liability is limited to action <u>for which the [government entity] is actually responsible</u>.'" <u>Grech</u>, 335 F.3d at 1329 n.5 (quotation and citation omitted). Indeed, governmental liability arises under § 1983 only where "'a deliberate choice to follow a course of action is made from among various alternatives'" by governmental policymakers. <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989)

(quoting Pembaur, 475 U.S. at 483-84). A government entity rarely will have an officially-adopted policy that permits a particular constitutional violation, therefore, in order to state a cause of action for damages under § 1983, most plaintiffs must demonstrate that the government entity has a custom or practice of permitting the violation. See Grech, 335 F.3d at 1330; McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. Of Cty. Comm'rs of Bryan Cty., Okla. v. Brown, 520 U.S. 397, 404 (1997) (citation omitted). The Eleventh Circuit has defined "custom" as "a practice that is so settled and permanent that it takes on the force of law" or a "persistent and wide-spread practice." Sewell, 117 F.3d at 489. Last, "[t]o hold the [government entity] liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted). Because Centurion's liability under § 1983 would be based on its functional equivalence to the government entity responsible for providing medical care and services to FDOC inmates, Hall must plead that an official policy or a custom or practice of Centurion was the moving force behind the alleged federal constitutional violation.

Defendants arguments rely on the premise that Hall fails to adequately allege an Eighth Amendment violation. However, as described above, the

19

Court has concluded that Hall has alleged a facially plausible deliberate indifference claim. Additionally, Hall alleges the existence of a cost-savings custom or policy that resulted in the denial of needed medical care to treat and prevent blindness caused by glaucoma. Hall also asserts that but for this alleged policy, his vision would not have deteriorated in the manner that it did. Based on Hall's allegations in the Second Amended Complaint, he has alleged a facially plausible deliberate indifference claim against Centurion. Accordingly, the Motion is due to be denied as to this argument.

## B.    Qualified Immunity

According to Defendants, to the extent Hall sues Perez-Lugo and Owojuyigbe in their individual capacities, they are entitled to qualified immunity against Hall's claims for monetary damages. Motion at 18-20. Defendants contend that Perez-Lugo and Owojuyigbe were acting within the scope of their discretionary authority. Id. at 19. As such, they assert the burden shifts to Hall to allege the existence of a constitutional violation and that the right they allegedly violated was clearly established. Id. Defendants maintain, based on the same arguments they raised earlier, that Hall has failed to state an Eighth Amendment claim against Perez-Lugo and Owojuyigbe. Id. at 20. Additionally, they argue that even if Hall established a constitutional violation, the right allegedly violated was not clearly established. Id. at 21. In response, Hall contends that Perez-Lugo and Owojuyigbe are not entitled to

20

qualified immunity because they deliberately denied Hall a referral to an ophthalmologist to save money and relies on <u>McElliot v. Foley</u>, 182 F. 3d 1248 (11th Cir. 1999) in support. Response at 10.

Initially, the Court notes that although "the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be . . . raised and considered on a motion to dismiss." <u>St. George v. Pinellas Cty.</u>, 285 F.3d 1334, 1337 (11th Cir. 2002). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" <u>Corbitt v. Vickers</u>, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting <u>St. George</u>, 285 F.3d at 1337). The Eleventh Circuit has stated:

> The qualified-immunity defense reflects an effort to balance "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009). The doctrine resolves this balance by protecting government officials engaged in discretionary functions and sued in their individual capacities unless they violate "clearly established federal statutory or constitutional rights of which a reasonable person would have known." <u>Keating v. City of Miami</u>, 598 F.3d 753, 762 (11th Cir. 2010) (quotation marks and brackets omitted).
>
> As a result, qualified immunity shields from liability "all but the plainly incompetent or one who is knowingly violating the federal law." <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002). But the

doctrine's protections do not extend to one who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff]." Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982) (internal quotation marks and alteration omitted).

To invoke qualified immunity, a public official must first demonstrate that he was acting within the scope of his or her discretionary authority. Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013). As we have explained the term "discretionary authority," it "include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority." Jordan v. Doe, 38 F.3d 1559, 1566 (11th Cir. 1994) (internal quotation marks omitted). Here, it is clear that Defendant Officers satisfied this requirement, as they engaged in all of the challenged actions while on duty as police officers conducting investigative and seizure functions.

Because Defendant Officers have established that they were acting within the scope of their discretionary authority, the burden shifts to [the plaintiff] to demonstrate that qualified immunity is inappropriate. See id. To do that, [the plaintiff] must show that, when viewed in the light most favorable to him, the facts demonstrate that Defendant Officers violated [Plaintiff's] constitutional right and that that right was "clearly established ... in light of the specific context of the case, not as a broad general proposition[,]" at the time of Defendant officers' actions. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001), overruled in part on other grounds by Pearson, 555 U.S. 223, 129 S.Ct. 808. We may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings. Maddox, 727 F.3d at 1120–21 (citation omitted).

Jones v. Fransen, 857 F.3d 843, 850-51 (11th Cir. 2017). The Court notes that where the alleged conditions are particularly egregious, a general constitutional law already identified in decisional law may be applicable such that a reasonable officer would know that the egregious conditions violate the Constitution. Taylor v. Riojas, No. 19-1261, 2020 WL 6385693, at *1 (U.S. Nov. 2, 2020).

Hall does not dispute that Perez-Lugo and Owojuyigbe were acting within their discretionary authority, so the Court next turns to whether qualified immunity is appropriate. To the extent Defendants argue Hall has failed to allege a deliberate indifference claim, the Court disagrees for the reasons previously discussed above. Hall has alleged a facially plausible deliberate indifference claim against Perez-Lugo and Owojuyigbe. Additionally, substantially delaying or denying an inmate necessary medical care for nonmedical reasons, such as cost, is a violation of a clearly established right. See Fields v. Corizon Health, Inc., 490 F. App'x 174, 185 (11th Cir. 2012) (citing Ancata v. Prison Health Servs., 769 F.2d 700, 705 (11th Cir. 1985) and Anderson v. City of Atlanta, 778 F.2d 678, 688 n.14 (11th Cir. 1985)) (concluding that cost cannot justify the lack of timely medical treatment for a serious medical need). At this juncture of the proceeding, Hall has carried his burden to establish that Perez-Lugo and Owojuyigbe are not entitled to dismissal of his claims on the basis of qualified immunity. Accordingly, as to

Defendants' claim of qualified immunity, the Motion is due to be denied without prejudice to Defendants' renewal in a motion for summary judgment.

## C.   Eleventh Amendment Immunity

Defendants contend that "[t]o the extent that Plaintiff sues Dr. Perez-Lugo and Dr. H. George in their official capacities for monetary damages, these claims are barred by the Eleventh Amendment." Motion at 21. Hall concedes that he cannot obtain monetary damages against Perez-Lugo and Owojuyigbe in their official capacities "and is only seeking damages from them in their individual capacities." Response at 10. In light of this concession and controlling case law, the Motion is due to be granted as to this issue. [8] See Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1220 (11th Cir. 2000) (noting that "the Eleventh Amendment does not generally prohibit suits against state officials in federal court seeking only prospective injunctive or declaratory relief, but bars suits seeking retrospective relief such as restitution or damages.").

In light of the above, it is

---

[8] A dismissal on the basis of Eleventh Amendment immunity is a dismissal for lack of jurisdiction and as such must be without prejudice.  See Nichols v. Ala. State Bar, 815 F.3d 726, 733 (11th Cir. 2016).

**ORDERED**:

1)      Defendants' Motion to Dismiss (Doc. 46) is **GRANTED in part** to the extent that Hall's claim for monetary damages against Perez-Lugo and Owojuyigbe in their official capacities is **DISMISSED without prejudice**. The Motion is otherwise **DENIED**.

2)      Defendants must file their answers to Hall's Second Amended Complaint (Doc. 45) by **June 21, 2021**. Thereafter, the Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of May, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8
C:      Counsel of record

25